0307, people of the state of Illinois, is the appellee by Stephanie Raymond v. Jordan Woosley, appellant by James Wozniak. Mr. Wozniak, good morning. Good morning. May it please the court, counsel. My name is James Wozniak. I'm with the State Appellate Defender's Office and I represent the appellant in this matter, Jordan Woosley. On July 10th of 2015, Mr. Woosley's attorney participated in a hearing by telephone. At that hearing, the state presented amended charges and Mr. Woosley asked and was ultimately allowed to represent himself. The lack of physical presence by Mr. Woosley's attorney at that hearing, which was a critical stage of the proceedings, was errored. And that error should result in reversal of Mr. Woosley's conviction and sentence. I think it would be helpful for the court for just a quick timeline, some facts of some important dates. Mr. Woosley was charged with home invasion, armed robbery, and burglary, excuse me, robbery. And he sat in custody for about a year until January of 2015 when the state filed a motion to appoint an expert to evaluate him for fitness, as they had a bona fide doubt as to his fitness. The court ultimately denied the state's motion. About six months later in July, there was a series of continuances by defense counsel and Mr. Woosley's trial was eventually set in mid-July of 2015. On July 10th of 2015, what the record shows was an on-scheduled hearing as the state had gone back into the judge's chambers asking for a continuance. It seems that the state may have had a talk to defense counsel beforehand to set up an arrangement where defense counsel could appear by telephone. Mr. Woosley was brought into court. Mr. Woosley was... So was there a written motion to continue in private? No. Just all informal. Correct. In front of the judge's chambers, says, you know, we're thinking about asking for more time, opposing counsel, doesn't have a problem with it, she's not available, let's give her a call. Is that kind of how... Correct, correct. And here's the... Well, the statement, the court was aware that counsel would not be present because she was at a conference and set up this phone procedure. But your client had no notice of this? No. No. And Mr. Woosley was... The judge even says on the record was confused why he was there in court and may have thought it was something that he wanted addressed, which was then when the trial court asked his counsel about, is there anything that you're aware of that Mr. Woosley wants addressed? She then indicates that she heard from Ms. Vinson, who Ms. Vinson is not clear from the record that Mr. Woosley wanted to represent himself. It doesn't appear on the record... So it's fairly clear that defense counsel hadn't even spoken to Mr. Woosley about the continuance? Correct. Or her position on the continuance? Correct. Or on his desire to represent himself, because she indicates that she first hears of this from another party via an email. Was this the first time he had done that? It was the first time that he had requested to represent himself. In prior hearings, there was obviously some, I would go as far as to say maybe even some animosity between Mr. Woosley, some frustration in the least, but he had not directly asked to represent himself until it's addressed at this July 10th hearing. And even at this hearing, he starts off in saying, I want to represent myself, but I want my defense counsel to be appointed a standby counsel for two reasons. One, to help me with things I don't understand, and secondly, for her to question me when I testify on my own behalf because he thought it would be a weird procedure for him to both essentially, he thought, ask questions to himself and answer it. The court seemed reluctant to go into Mr. Woosley's request to represent himself at the July 10th hearing, but defense counsel ultimately said, that's fine, Your Honor, you could admonish him. Before those admonishments occurred, the State said they had amended informations, which added an accountability theory to all the charges. The State stepped out, returned, those charges were read, the penalties were read to Mr. Woosley. Ultimately, the court admonished Mr. Woosley, allowed him to represent himself, and his counsel was allowed to hang up the phone. Six days later, Mr. Woosley's trial was set, the State's motion to continue was granted. Later that afternoon, the parties returned to court. Mr. Woosley entered into an Alford plea where he pled guilty to a robbery, received probation, and was released from custody. Less than 30 days after that, he hired private counsel. His counsel filed a motion to withdraw his guilty plea, and she also filed a motion asking for the court to appoint an expert to apprise Mr. Woosley's fitness. As she was concerned, he couldn't help himself in the post-plea proceedings. Mr. Woosley was on fit to assist in October of 2015, although by February of 2016, the expert felt that Mr. Woosley was fit and indicated that Mr. Woosley's fitness wavered in and out of fitness. The doctor was asked to apply as to Mr. Woosley's fitness when he pled guilty on July 16th, but not to July 10th when this telephone conference occurred. A defendant has a right to counsel at every critical stage of the proceedings, and here, Mr. Woosley was denied his right to interrogate at a critical stage of the proceedings. And that was a critical stage where important things were discussed. One was the amended charges that the State presented. Secondly, it was... And fairly complicated amendments, because it went from, it went to a theory of accountability, which is difficult sometimes. Correct. So all the charges added the accountability theory, and then the robbery charges added, I believe, before the amendment, it was property taken from the person of, and then it added from the person or presence of. So even though these charges had been pending for a long time, the State had not amended the charges until just a few days before the jury trial. Correct. And a year and a half after he had been originally charged and arrested on this matter. And the State did all this without the presence of his attorney, even though it had expressed some concern about his mental fitness? Correct. In January of 2015, they had filed a motion asking that an expert be appointed. And the concern to the State at that time, Mr. Woosley was in custody for all the period of time from he was arrested in January of 2014, I believe, up until when he pled in July of 2015. And the concerns from the State was that while incarcerated, he had acted, they had listened to apparently jail phone calls. He was acting erratically emotionally. He had made threats to harm himself and others. He had not been regularly taking psychotropic medication. His counsel couldn't confirm any of these things. She had not listened to the jail calls. Ultimately, when he was found on fit, the doctors noted that he suffered from paranoid schizophrenia, that his fitness vacillated, his mental health vacillated between fit and on fit. And a large part of that was him not taking his medications. And the court even noted, and this is, again, six days after this telephone conference, when Mr. Woosley pled guilty, that Mr. Woosley was crying during the proceedings. The court said, it's not the first defendant that I've seen crying. But I think when you have the issues that the State noticed six months before that telephone conference, then after, the court can consider that as to what Mr. Woosley's mental health was. On the day he asked to represent himself. And who's in the best spot to determine whether one, Mr. Woosley's fit to stand trial or competent to represent himself. And that would be his defense counsel, the counsel that's represented him for 18 months, has had the most personal contact with him. By her appearing on phone, the issue is, is that she's not able to personally observe him. How he's behaving, his mannerisms, how he's speaking. She's also not able to privately confer with him. And I think that's one of the issues that this record shows. What the State argues in its brief, and I'm sure we'll argue here, is that, well, Mr. Woosley could have said, hey, I need to talk with my attorney privately. But the court made no indication, or the record makes no showing, that that procedure would have been available or set up. And, in fact, there's a point where the prosecutor leaves the courtroom to get the amended charges. And the court expressly says to Mr. Woosley, you can say whatever you want, but remember it's on the record. I want you to stand quietly there until everyone's back in the courtroom. Which I think is an indication to Mr. Woosley is that he's not able to confer privately with his attorney. Can I ask you, what is it that you want us to find? Do you want us to say that you can never have a proper representation by phone? Are you asking us to do a case-by-case analysis? I think that this court should find that at a critical stage of the proceedings, when an attorney appears not physically present, that error occurs. It's structural error, and that should result in a reversal of the conviction. However, here, if the court wants to take a more narrow approach, I think the facts can allow the court to do that. And that is, with the case law that I cited, I believe it's Noble and the federal case, Verdez, that denial of consultation with your attorney is error. And I think that the procedure that the court put into place here denied the right to consultation with his attorney. Because the state's gone out to get the amended charges. This is the first time that counsel hears about it. This is the first time that Mr. Woosley hears about it, which, hey, I want to talk to my attorney. What does this mean? What does this accountability theory mean? And the court says... Yes. I would agree with that, Your Honor. Yes. Yes. I agree, Your Honor, because this trial was... Yes. I wish I could say it's uncharacteristic, but it seems very unfair to me that you bring a defendant over and allow the judge to discuss the case with them, even tell him to be quiet because he's out of the record, without defense counsel standing there or participating in the conversation. And I think it crossed... The record bears that that momentarily crossed the trial judge's mind that this might be proper, saying, when he said, I'm hesitant to go forward with these admonishments because we're here just on a motion to continue for the state. So if that's all that had been conducted, if it was just a ministerial, we're going to do a motion to continue or set a discovery deadline or do something, would your argument be the same, or is it that it is the nature of the proceeding and that it is because they brought in these new charges or even the, hey, I want to represent myself, that isn't... The proceeding by phone is not proper at that point. I think it would be proper, even the ministerial duties to make sure the attorney's there, but I think the key is, is it a critical stage? And I think arguably a motion to continue or something simply... I mean, it's going to happen where counsel's car breaks down or there's snow or there's some reason that a counsel can't be there, but they can set up for a telephone conference and the court can say, hey, we're here. Counsel can't be here. We're going to move it to a spot where everyone can be here and try not to engage as little conversation with the defendant who's represented by counsel as possible. Here what occurred was a critical stage. It was a critical stage both because of the amended charges being presented, but also because ultimately he was allowed to represent himself. And Mr. Woosley wasn't someone that was adamant this entire time that he wanted to represent himself. He had his attorney for a year and a half. When he says, I want to represent myself, he still wants her, that specific attorney to stand by counsel. As soon as he pleads guilty and files his motion for new trial, he hires private counsel to represent him in the post-plea proceedings. So again, what we would say here is that it was error when the court allowed the attorney to appear at this hearing by telephone conference. Mr. Woosley was denied his right to consult with his attorney. He was denied the right of effective assistance of counsel. That error was second-pronged claim error, and this court should find as such. Again, we'd ask that the broad error that any time an attorney appears this way at a critical proceeding is error. But again, I think this court can, on the facts along here, find a more narrow ruling that Mr. Woosley was denied his right to consultation because of what the court told him. We'd ask this court to reverse Mr. Woosley's conviction and sentence Miranda's for further proceedings. And is there any other questions from the court at this point? Thank you. Ms. Raymond, good morning. May I please the court, your honors, counsel? My name is Stephanie Raymond. I represent the people of the state of Illinois in this matter. Excuse me, I've been sick, so my voice is just a little hoarse. It's the people's position that the defendant's right to counsel was not violated in this case. Defendants did request to represent himself, and that request was granted. During the July 10th hearing, which was sort of informal by the people as counsel laid out, the defendant was brought in and he then requested to represent himself. The judge did express some hesitation, but the defendant was adamant about representing himself. Throughout the proceeding, the defendant was adamant about representing himself in this matter. The trial court asked him several times throughout this specific hearing if that's what he wanted, to represent himself. He was admonished at length regarding this right. During the admonishments, he was still represented by counsel, correct? Correct. And she wasn't there? She was on the phone. And the reason that he couldn't move forward with her, I think his words were move forward, was because she seemed disinterested. He felt that his reason for wanting to represent himself was that he felt she was not prepared to go to trial. He was prepared to go to trial. She wasn't even prepared to be in the courtroom that day. The state knew that she was not going to be there. There's some facts on the record that some people may have known she was going to be at this conference during this time. The people wanted the continuance and they asked the trial court and the defendant was brought over. So it's on the record that the state even knew she wouldn't be unavailable and walked up to the judges chambers anyway? I'm not clear on exactly. I don't want to give the wrong answer, but it's So they come to the motion to continue and during this, the state does say that they want to do an amended information to include accountability. They didn't even have it with them in the courtroom. They had to go get it. Correct. Accountability, the language for that is not required in the charging instrument and accountability theory itself is not a crime. I suppose the defendant knew that. Well, when the trial court asked him that, okay, at this point, do you still want to represent yourself? Is there anything that he still wanted to represent himself? The defendant noted that regarding the penalties of his charges, he had read the statute and that he was clear he was ready to go to trial. He was prepared for trial and in fact the motion to continue actually went through. They had the hearing and the defendant successfully argued that the people's motion to continue should be denied and it was denied. The motion to continue was based on the unavailability of witnesses. The trial court informed them that you need to proceed on what evidence you have because this has been prolonged for so long. The trial court noted that even after this, he was asked again and again over and over, are you sure you want to represent yourself? The defendant was adamant about that. I guess he didn't say he wanted to solely represent himself. He did ask that this attorney still be allowed to be his stand-by counsel. Correct. And the trial court expressed some concern about that because stand-by counsel is discretionary. It's not a right that he's required to. And I guess the problem that I see is that at that point when he isn't able to have his counsel say to him, hey, you don't want to do this. This is what's going to happen. They're bringing in these new charges. They're doing this. They're doing that. There's going to be things that you don't understand. So I really want, you know, if we've had problems, we'll work through those. But you shouldn't be representing yourself. And that kind of interplay that would normally take place just didn't happen. And to say that he successfully argued part of it is great, but he was not prepared that they were going to present these new charges to him. He wasn't prepared to ask for him to represent himself that day. And the trial court asked did he want a continuance? Do you want a continuance? Do you want to, you know, and he said, no, I do not want a continuance. He wanted to go forward and he was prepared to go to trial. I mean, he expressed that on the record. So no, there, I mean, he was, he was given multiple the trial court and watched him. But he wasn't aware that there was a court date that day. He wasn't in his jail cell preparing a statement that he was going to discharge his attorney that day at a court hearing. He was brought over, right? And he was like, hey, what's going on? And the state goes, oh, there's a motion to continue and your counsel didn't have any problem with it. I mean, it wasn't like he knew this was coming that day. Right? I believe so. Yeah. So, I mean, you know, at that point he comes over and he's like, what, what motion to continue? What are they talking about? No, I want to go forward and sort of caught him aware. I don't know that it's appropriate to say, well, she was on the phone. Were they ever alone? Were they, I mean, did the judge ever leave? Did he ever say to them, you two need to talk? No, he did not say that. At no time did the defendant express that either. He made it clear that he did not, him and his counsel, did not see eye to eye in the fact that he felt she wasn't prepared for trial. He did not ask if he could have any, you know, any interaction with her, you know, just himself. But the cases that are cited by a defendant regarding the, you know, the conferring with your counsel are cases in which the trial court specifically ordered counsel not to speak with their clients. That's not, we don't have that in this case. In one of the cases. Yeah, go ahead and say whatever you want, but it's all on the record. I don't think there's anything that's more chilling than that. Say, hey, anything you say is going to be recorded here. So, I mean, you know it's not like that. Well, I think just him admonishing him of the fact that they're on the record does not necessarily mean that he, I mean, it's not something that shows that he is, you know, putting a sort of any, you know, barrier in between him and his counsel. I mean, the defendant was, he was clear and had him on the record throughout the proceedings. I mean, this is his, regarding his fitness, his fitness was not an issue. There was, initially there was, you know, this bona fide doubt was raised by the people. The trial court ultimately found that that was not, there was no bona fide doubt. And later, after defendant pled guilty, there was another, there was an evaluation done. But there was an addendum to that evaluation that said defendant was fit and that during, there's no evidence that he was not fit during the plea. Had defense counsel been there, there's nothing that, defense counsel does not determine fitness. She's not someone who says, I think that's not her job. What she could have done is raised a bona fide doubt. That's the only thing she could have done. And her presence, physically or over the phone, it's irrelevant to that. Did anybody ask the defendant if he was on his medication? I'm sorry? Did anybody ask the defendant if he was on his medication? During the initial, later or? During this hearing. No, I don't, I don't remember. I'm not sure. Because the court didn't actually find that there wasn't a bona fide doubt. The court found that he hadn't been taking his bona fide doubt to his fitness during that initial, the January 27th one. He told them that he needed to take his medication? Yeah. So did anybody check to find out if he was on his medication that day? I'm not sure. I'm not sure about that. I don't, I don't remember that being something in the record. But just, so it's the people's position that the defendant was, his rights counsel was not violated, where he requested to represent himself and that request was granted. So the people would just ask that he affirm his conviction and sentence. Unless there are no other questions? Thank you, Ms. Raymond. Mr. Wozniak, any rebuttal? I think this is from the people's briefs, page six from the record. It looks like page 495 through 97. And this is how that hearing begins. This is the court. This matter is set for jury trial to begin July 14th. The prosecutors come into my chambers, oh, a half hour ago or more and want to know if I could consider a motion to continue this afternoon and that defense counsel could make herself available by phone conference. Well, I brought Mr. Woosley up to the bench and he wasn't aware of what, why he was called into the courtroom. He was wondering if it was in regard to some request he had. Ms. Buckwalter, are you aware of anything? As far as the request from the defendant on anything, do you know what he's talking about? I think that shows the air of how this entire procedure happened. The state's coming to the court, I'm assuming without defense counsel there at that point, although maybe the state had talked to defense counsel, and said we have a motion to continue. And the court should have said, well, I know defense counsel's not going to be here. Full stop. We're not dealing with it. File your written motion. We'll set it for hearing. Make sure defense counsel can be here. As soon as the court started to engage on that motion to continue, which may in and of itself be a ministerial, if done properly, the court erred. Because now we're bringing in the defendant, the court from its comments sounds like was engaged in a conversation with the defendant without his counsel being present about whatever his request was. And then compiles the error to continue to go on when amended charges are read and ultimately he's allowed to represent himself. And I think if his counsel was present, not only can she ascertain whether or not he's fit to stay in trial, one of the things, there's a competency to represent yourself, which you can be fit to stay in trial, but not competent to represent yourself. And one of the things that he was denied, Mr. Woosley was denied by his counsel not being present was his counsel being able to determine his competency to go forward. There's now new amended charges, new complicated legal theories. Whereas, Justice O'Brien, you said, Mr. Woosley's working on his case, possibly in his jail cell, he's ready for trial, now suddenly he's got a new theory of the offense, both on, from the presence or person of, and accountability. I think it would behoove any defense counsel to say, okay, your Honor, I understand that my client is asking to represent himself, but there's something new that's been thrown in here. I need to sit down in private and discuss with him whether or not he understands what these new charges mean, whether or not it's still his desire to represent himself. Because at that point, Mr. Woosley might say, okay, you know what, I don't want to represent myself anymore because this is new and complicated. And I think that as soon as the Court started to engage in these, I think in the way it facts out here, really anything, because there was no written motion from the State to continue. But I think for sure as soon as the Court started to engage in something beyond that motion to continue or had a discussion with Mr. Woosley about a substantive matter with his attorney not being present is where the Court erred. And ultimately, that motion didn't end up with a guilty plea. And then file the motion to withdraw his guilty plea shortly thereafter. I think the fitness issues of what the State's concerns are before this hearing and afterwards add some substance to the claim. I think if Mr. Woosley was completely, there's nothing in the record that he was fit. There was no fitness issues at all. There's no issues about his medication, which was not asked about at this hearing. I think this error still can be reached. But I think when you add all of this fitness things that are going on before and afterwards compounds this error and makes this even more of a structural error where Mr. Woosley was denied his right to consultation and the effective assistance of counsel. Are there any other questions? I failed to see the urgency in this. I do not understand why the judge decided to oblige the prosecutor on the page that you pointed out on page 6 of the State's brief. The judge states, hey, we were just here two days ago with defense counsel. And nothing was mentioned at that time. The State needed to continue to try. So this is more than just an administrative matter. This is a trial judge who's, I can't imagine if the defendant walked into the courtroom and said, judge, I would like to continue the trial, that the same proceedings would have happened. This is just a judge obliging the State and steamrolling over the defendant's right to have his attorney standing next to him. The judge even says on the record, we knew you couldn't be here today. Yes. So when you answered Justice McDade's question earlier about what do you want us to do, what do you want us to do with these facts? With these facts, I think what this court, the procedure here, was a critical stage and he was denied his right to counsel. The error that I think this court should reach is really globally in all cases is that at a critical stage when an attorney is not physically present, that's error. That should not occur. The telephone conference, the mirror image is the Stroud case, although a different right, the due process right of the defendant not being present. But in that one, the court found error and that was a closed circuit television. So everyone could hear and see each other. Here you can only hear the attorney and there was nothing in the record about the procedure that was even going to be set up to allow him to go as far as what we are asking the appellant is asking here, that the cases that I cited in my brief about the denial of the right to consultation. Yes, I understand those cases were overnight proceedings during a jury trial and the court said you can't confer with your attorney. I think even a momentary denial of consultation is a denial of consultation. And here in the record, by what the court said is everything you're going to say is going to record it, but I want you to stand here and be quiet. And it's putting a lot on Mr. Woosley than to say, oh, well, I have a right to stand up and say, I want to represent or I want to confer with my client or my attorney in private. I think the court's words were a strong indication. Mr. Woosley was he wasn't able to confer with his attorney in private that he had to stand there and let the proceedings happen as they were going to occur. Is there a case law out there that says that everything that happens after a certain point is an arraignment or something becomes a critical stage? Because I can think of situations where just a motion to continue is critical if you have a pending speedy trial action. I agree. I agree with that. And I think that we step into some kind of a mess when we try to say, okay, this one is critical and this one is not. I think for the court here, the answer for a critical with the case law states is that a critical proceeding can be viewed as any time where a defendant is exercising or giving up a constitutional right. And here, obviously, Mr. Woosley was giving up a constitutional right, his right to be represented by counsel. I think, and I understand that the what is critical and not critical, but here, I don't think there should be any argument that this was a critical stage of the proceedings. Yes, there was a motion to continue involved in it, but everything beyond it made it, for certain, a critical stage and he was denied his right to counsel. It was a constitutional right to due process. He didn't know that this was coming. Correct. There's no due process here. He had no notice. It appears defense counsel may not have had notice either. Correct. Correct. I think that it may seem like we're being picky, but we write not just to resolve this case, but the decisions are precedent in other cases and you don't want to solve one problem and create another morass of problems over here. So that's why I want to understand what it is that you are looking for from us. Ultimately, obviously, Your Honor, I'm looking for relief for Mr. Woosley and the reversal of his conviction and sentence. However, the court reaching a decision where that's accomplished is what I'm asking for. But I think going forward, what your concerns and questions are, and I think, especially in the nature of technology and Skype and all of these ways with the courtrooms being wired for communication, that it would be useful precedent going forward if this court agrees with our argument to say that at least at a critical stage, and whatever this court wants to apply as to what is a critical stage, at least related to this case, that it is air when an attorney is not physically present. That appearing by telephone, appearing by Skype, appearing by closed-circuit television, not physically being able to be there to privately confer with the client is air and that the court shouldn't allow that procedure to happen. And to assess whether your client is actually grasping what's going on. Yes. If there's no further questions, again, we'd ask for a reversal of Mr. Woosley's conviction and sentence to remain as for further proceedings. Thank you, Your Honor. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.